FILED'08 JUL 23 15:46USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TY DAUL and RAYMOND GRUBE, | CV. 08-524-AC |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| PPM ENERGY, INC., | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiffs Ty Daul and Raimund Grube (collectively "Plaintiffs") filed this action against their former employer PPM Energy, Inc., ("PPM") in state court. In their complaint, Plaintiffs allege that PPM breached the Special Severance Protection Agreement entered into by the parties on April 16, 2007, (the "Agreement") by not paying them the severance pay and benefits they were entitled to under the Agreement when they resigned. PPM removed the action to this court on May 1, 2008, on the basis that the Agreement is an employee benefit plan under the federal Employee Retirement

Income Security Act (29 U.S.C. §§ 1001 *et seq.* (2006)(the "Act" or "ERISA"), and, thus, that federal law preempts Plaintiffs' breach of contract claim. Presently before the court is Plaintiffs' motion to remand this action back to state court. For the reasons set out below, Plaintiffs' motion should be denied.

*Background*

In early 2007, Iberdola S.A. ("Iberdola") was in negotiations to purchase Scottish Power Plc ("Scottish Power"), the parent corporation of PPM. In an effort to allay their fears and encourage them to continue their employment with PPM pending the outcome of the negotiations, PPM offered the Agreement (referred to as a "special severance package") to "a very few select group of individuals." (Daul Aff. Ex. 1 at 1.) Daul, PPM's vice president of business development, and Grube, PPM's managing director of business development, both accepted the Agreement and agreed to continue their employment with PPM for the foreseeable future.

Under the terms of the Agreement, which replaced the existing PPM Energy, Inc., Severance Plan (the "Existing Plan") for the employees who accepted the new plan, Plaintiffs were entitled to severance benefits if they were involved in either: "(1) a Qualifying Employer-Initiated Termination within 12 months following a Change in Control; or (2) a Qualifying Employee-Initiated Resignation that occurs no later than the 13[th] month following the Change in Control."[1] (Daul Aff. Ex. 1 at 3.) A Qualifying Employee-Initiated Resignation occurs when an employee voluntarily resigns as the result of a "Constructive Dismissal" or a "Material Alteration in Compensation." (Daul Aff. Ex. 1 at 3.)

---

[1] The Change in Control occurred on April 23, 2007, the date the purchase of Scottish Power by Iberdola closed.

An employee suffers a "Constructive Dismissal" when "considering the employee's job responsibilities and scope of authority in the aggregate, the employee's role has unilaterally changed and has been materially diminished in a manner which effectively removes the employee from a position substantially comparable to the one the employee held immediately prior [to] the Change in Control." (Daul Aff. Ex. 1 at 3.) A "Material Alteration in Compensation" is:

> any of the following, provided that the change is not related to a change in business performance or Participant's performance or a restructuring of Participant's pay components so that the Participant's total direct compensation (base salary, bonus, and long-term incentive) is comparable:
>
> (1) The Participant's base pay is reduced by any amount, regardless of whether the reduction is due to business or Participant's performance or a restructuring of pay components as set forth in 2(b) above;
>
> (2) The participant's earnings opportunity is adversely impacted by a change in the annual incentive structure, practices or administrative guidelines, other than in the ordinary course or already planned prior to the transaction, that results in:
>
> (a) a limit or cap on Participant's bonus opportunity
>
> (b) a reduction in the Participant's opportunity to earn bonuses consistent with the Annual Incentive Plan dated FY 2006-2007 ("Annual Incentive Plan") and the Guidelines for Administration of the Annual Incentive Plan FY 2006-2007, which reflect the administrative practices in effect immediately prior to the Change in Control. For this purpose, a qualifying change shall include, but not be limited to, a change from the current structure of recognizing business value and profit contribution in bonus allocations, a material change from the historical levels of Participant awards considering comparable business value and profit contributions and roles, or a material reduction in the proportion of profit and value sharing allocable to incentive funding.
>
> (3) The Participant's earnings opportunity is adversely impacted by a material change in the scope of the Participant's responsibilities which limits the employee's contributions to key measures linked to reward opportunity in the Annual Incentive Plan.
>
> (4) The Participant's earnings opportunity is adversely impacted by a change in the long-term incentive structure or administrative practices as described in the Value

    Appreciation Rights (VAR) Plan that results in:

    (a) the elimination of the Participant's opportunity to earn comparable value appreciation for growth of PPM;

    (b) material changes to valuation methodology or the corporate structure used for valuation purposes, if any such changes has an adverse impact to the valuation of PPM for long-term incentive purposes.

    In the event that a Participant voluntarily accepts a position that results in any of the above, this would not qualify as a "Material Alteration in Compensation" or a "Constructive Dismissal["].

(Daul Aff. Ex. 1 at 3-4.)

    The Agreement requires an employee to give the Company[2] 60-days notice of their intent to voluntarily resign based on a Constructive Dismissal or a Material Alteration in Compensation. If the Company is able to cure the Constructive Dismissal or Material Alteration in Compensation within 20 business days of receiving the notice of intent to voluntarily resign, the employee is not eligible for severance pay or benefits under the Agreement. (Daul Aff. Ex. 1 at 4-5.)

    Under the Agreement, severance pay is equal to the greater of the pay allowed under the Existing Plan or the employee's base pay and target bonus for twelve months. Severance benefits include:

    (1) Company-subsidized health benefits for a period of six (6) months following the month in which the Participant terminates employment. The subsidy will be the same as the subsidy levels available to active employees at that time.

    (2) Executive level outplacement assistance for a period of twelve (12) months following termination from employment.

    (3) A prorated annual incentive award for the final performance period in which the Participant terminates employment. This prorated award will be determined on a

---

    [2]The "Company" is defined as "PPM Energy, Inc., its parent company, successors and assigns." (Daul Aff. Ex. 1 at 3.)

discretionary basis by the Company, on the same basis as under the administrative guidelines and practices for the Annual Incentive Plan.

(4) Accelerated vesting of any unvested Value Appreciation Rights (VARs). All vested VARs will be paid out to the Participant based on the next valuation following the Participant's termination from employment.

(Daul Aff. Ex. 1 at 5.)

In September 2007, PPM cancelled the existing VAR Plan and did not replace it with a comparable long-term incentive plan. Plaintiffs advised PPM of their intent to invoke an Employee-Initiated Resignation on November 15, 2007. Plaintiffs informed PPM that they felt the changes to the VAR Plan adversely impacted their ability to profit from PPM long-term success and, therefore, qualified as a Material Alteration in Compensation under the terms of the Agreement. Plaintiffs also claimed that PPM's Annual Incentive Program was altered to some degree after the Change in Control and that Plaintiffs' job responsibilities and scope of work were substantially changed as a result of organizational restructuring. PPM failed to cure either the Constructive Dismissal or Material Alteration in Compensation claimed by Plaintiffs within 20 days after receiving notice of the claims. Plaintiffs' resignations became effective on January 15, 1008. PPM has informed Plaintiffs that it does not recognize their resignations as Employee-Initiated Resignations under the terms of the Agreement, and it has refused to pay Plaintiffs the severance pay and benefits provided for in the Agreement.

*Legal Standard*

28 U.S.C. § 1447(c) provides:

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

Page 5 - FINDINGS AND RECOMMENDATION                                {SIB}

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.*

Only cases that would have had original jurisdiction in a federal district court may be removed from state court. 28 U.S.C. § 1441(a)(2006). "Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). There is no diversity jurisdiction in this matter. Thus, the court must determine whether there is federal question jurisdiction over the parties' dispute and, more precisely, whether ERISA confers that jurisdiction.

Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2006). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, federal courts have recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9 (1983). "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.* at 13.

It is clear that the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow*, 478 U.S. at 808. Federal question

jurisdiction exists only if the federal question appears on the face of plaintiff's complaint; if not, original jurisdiction is lacking, even if the defense is based on federal law. *Id.*

*Discussion*

Here, PPM asserts that the Agreement is an employee benefit plan under the terms of the Act and that Plaintiffs' claim is completely preempted by federal law. The Act provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a)(2006). The Supreme Court has noted that "[t]he pre-emption clause is conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), and the Ninth Circuit has observed that "ERISA preemption is notoriously broad...." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1322 (9th Cir. 1992), *cert denied*, 507 U.S. 1031 (1993).

The court must address three issues when considering whether a plaintiff's state law claim is preempted by the Act. First, the court determines whether the contract or agreement underlying the dispute is an "employee benefit plan" as defined by the Act. The Act generally defines an employee benefit plan as a plan, fund or program established or maintained by an employer to provide various benefits to its employees. 29 U.S.C. §1002(3)(2006). A plan established by an employer for the purpose of providing severance benefits to employees may qualify as an employee benefit plan. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 17-18 (1987).

The Ninth Circuit has created a "relatively simple test" to "determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994). An employer must be obligated to apply "ongoing, particularized, administrative, discretionary analysis" to make an employee benefit program a plan under the terms of the Act. *Bogue*, 976 F.2d at 1323. A mere "modicum of

discretion" on the part of the employer is not sufficient. *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997).

Second, the court needs to consider whether the claims asserted by the plaintiff "relate to" the employee benefit plan. Plaintiffs' state law claim "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The Ninth Circuit has determined that four types of state laws "relate to" ERISA plans and are therefore preempted: (1) laws that regulate the type of benefits or terms of ERISA plans; (2) laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans; (3) laws that provide rules for calculation of the amount of benefits to be paid under ERISA plans; and (4) laws that provide remedies for misconduct growing out of the administration of ERISA plans. *Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349, 1357, *as amended*, 791 F.2d 799 (9th Cir. 1986), *overruled on other grounds by Fresh Intern. Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353 (9th Cir. 1986).

Third, the state law claim must fall within the scope of the Act's civil enforcement provision found at 29 U.S.C. §1132(a). *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004). Section 1132(a) provides, in pertinent part, that a participant or beneficiary of a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).

1. Employee Benefit Plan

Plaintiffs state that the Agreement is an individually negotiated contract between the parties and was intended by the parties to be an individual contract, not an employee benefit plan, and that

it contains no language designating a plan administrator, creating ongoing administrative duties or granting discretionary authority, such as are contained in employee benefits plans.³ Plaintiffs argue that these characteristics make the Agreement similar to the contracts found to be individual contracts and not employee benefit plans under the Act by the Ninth Circuit in *Delaye* and *Velarde*. PPM contends that the Constructive Dismissal and Material Alteration in Compensation provisions of the Agreement implicate an ongoing administrative scheme similar to the contracts determined to qualify as employee benefit plans by the Ninth Circuit in *Bogue* and the district court in *Grimm v. Healthmont, Inc.*, No. CV 01-982-BR, 2002 WL 31549095 (D. Or. Oct. 29, 2002).

*Bogue v. Ampex* is instructive here and supports the conclusion that the Agreement is an employee benefit plan. In *Bogue*, Allied-Signal, the parent company of Ampex, offered ten Ampex executives a special compensation package in the hopes of retaining the services of the executives for the short-term future. The package provided severance benefits to the executives in the event Allied-Signal or a purchaser of Ampex failed to offer the executives substantially equivalent employment and terminated the executives. The package defined "substantially equivalent employment" as a "job that included 'responsibilities similar' to those performed while Allied-Signal still owned Ampex." *Bogue*, 976 F.2d at 1321. The packages designated Allied-Signal as the entity

---

³Plaintiffs also compare the Agreement with the Existing Plan (which Plaintiffs concede is an ERISA plan), point out the deficiencies in the Agreement and argue that the Agreement can not be an employee benefit plan. The court must look to the four corners of the Agreement to determine whether it meets the criteria for an employee benefit plan under the Act; the fact that the Agreement does not look like the Existing Plan is irrelevant. Furthermore, severance agreements are exempt from certain provisions of ERISA, which may well explain why the plans look different. *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 98 (9th Cir. 1993). *See also* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)(exempting "top hat" plans from certain ERISA requirements). Because the court finds that the Existing Plan is irrelevant to its consideration of whether the Agreement is an ERISA plan, PPM's motion to strike the Existing Plan, which is attached as an exhibit to Plaintiffs' affidavits, is denied as moot.

responsible for determining whether benefits were payable. *Id.*

Bogue resigned from the Ampex after he was offered a position that he did not consider to be "substantially equivalent" to his former position as Vice President of Marketing and Sales and sought severance benefits pursuant to the package. Allied-Signal denied Bogue's request for severance benefits finding that the new position was substantially equivalent to the previous job. Bogue filed an action in state court to recover the severance benefits. Allied-Signal removed the action to federal court asserting that the package was covered by the Act. The district court denied Bogue's motion to remand. *Id.*

On appeal, the Ninth Circuit affirmed the district court's denial of the motion to remand. In addressing the question of whether the severance package was an employee benefit plan under the Act, the Ninth Circuit adopted the Supreme Court's reasoning set forth in *Fort Halifax* and held that a benefit plan that creates a need "for an ongoing administrative program for processing claims and paying benefits" is properly characterized as an employee benefit plan under the Act. The Ninth Circuit then found that the severance package, which created more than "'[t]he theoretical possibility of a one-time obligation in the future," was governed by ERISA. *Bogue*, 976 F.2d at 1322, *quoting Fort Halifax,* 482 U.S. at 12. Because Allied-Signal retained the obligation to determine whether a new position was "substantially equivalent" to the former position, the severance package created a need for an ongoing administrative program. The Ninth Circuit explained that:

> [a]lthough its application was uncertain, its term was short, and the number of its participants was small, the program's administration required a case-by-case, discretionary application of its terms.

*Bogue*, 976 F.3d at 1323.

In *Delaye*, the Ninth Circuit applied this test and found that an employment contract which

Page 10 - FINDINGS AND RECOMMENDATION                                            {SIB}

provided for severance payments in the event the employee was terminated was not covered by the Act. The employment contract provided for different payments depending on whether the termination was for cause or without cause. The Ninth Circuit reasoned that the one-time determination of whether the termination was for cause and the resulting obligation to send Delaye, a single employee, a monthly check and pay his insurance premiums for up to two years "does not rise to the level of an ongoing administrative scheme." *Delaye*, 39 F.3d at 237. The Ninth Circuit then distinguished the employment contract currently before it from the severance package addressed in *Bogue*.

> First, the *Bogue* severance plan was triggered if the covered employee was not offered "substantially similar" employment. The *Bogue* court described this condition as requiring decision-making obligating the administrator to engage in "ongoing, particularized, administrative, discretionary analysis." Here, Delaye's rights to severance benefits are set by criteria in his contract. * * * .
>
> Second, *Bogue's* severance package covered ten top executives. Crucial to the analysis in *Bogue* was the fact that the employer would need to make its discretionary determinations ten times, as it considered the severance benefits in each of the top executives' contracts. No such ongoing discretionary analysis is required in the present case.

*Delaye*, 39 F.3d at 238 (citations omitted).

The import of the number of employees covered by a plan was subsequently diminished by the Ninth Circuit in *Velarde*, which addressed the proper characterization of an offer made to a number of employees, including the 25 plaintiffs in the action, promising a "stay on bonus" if the employee agreed to work through January 18, 1994. The bonus calculations were based on the employee's rate of pay as of December 24, 1993, and the length of their employment. Any employee who voluntarily resigned or was terminated for cause prior to January 18, 1994, was not entitled to receive the bonus. *Velarde*, 105 F.3d at 1315. The Ninth Circuit concentrated on the type of

Page 11 - FINDINGS AND RECOMMENDATION                                              {SIB}

determination to be made by the administrator, not the number of times the determination had to be made.

> Here, as in *Delaye*, the employer was simply required to make a single arithmetical calculation to determine the amount of the severance benefits. While in both cases, a "for cause" termination would change the benefits due to the employee, the *Delaye* court did not deem this minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan. Contrary to PACE's assertions, the key to our holding in *Bogue* was that there was "*enough* ongoing, particularized, administrative discretionary analysis," to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.

*Delaye*, 105 F.3d at 1317 (citations omitted and emphasis added).

Judge Brown of this court has applied the standards set forth by the Ninth Circuit in the above cases to a severance plan. In *Grimm*, New Amercian Healthcare Corporation offered plaintiff Grimm the opportunity to participate in the corporate severance plan at the time it hired him as chief operating officer of two of its hospitals. The severance plan provided that "an employee whose job is eliminated and who is offered a similar position * * * will not be eligible for a severance benefit." *Grimm*, 2002 WL 31549095 at *1. Defendant Healthmont purchased the hospitals and eventually eliminated Grimm's position. Grimm filed an action to recover benefits under the severance plan in state court. Healthmont then removed the action to the district court arguing that the severance plan was an employee benefit plan under the Act. *Id.* at *2. Judge Brown questioned whether the court had subject matter jurisdiction over the action and asked the parties to brief the ERISA preemption issue. *Id.* at *3.

While Grimm conceded that the severance plan was an ERISA plan, Judge Brown still

considered the question of whether the severance plan qualified as an ERISA plan under the test set forth in *Bogue*. Judge Brown explained that:

> [t]he Severance Guidelines required the plan administrator to analyze the circumstances of each covered corporate employee to determine whether an employee's new position is a "similar position." To make that determination, the plan administrator has to determine whether the scope of the responsibilities and duties of the new position is similar to those of the original position. This is a discretionary decision that must be applied to multiple employees much like the plan in *Bogue*.
>
> Based on the foregoing, the Court finds the Severance Guidelines implicated an ongoing administrative scheme that requires the plan administrator to exercise its discretion to determine eligibility for benefits. The Court, therefore, concludes the Severance Guidelines are also an ERISA plan.

*Id.* at *6.

This court finds that the Agreement currently before the court is substantially similar to the plans addressed in *Bogue* and *Grimm*. The Agreement required an analysis of whether a Constructive Discharge occurred which necessitated a determination that an employee's role had "unilaterally changed" and "been materially diminished in a manner which effectively removes the employee from a position substantially comparable to the one the employee held immediately prior to the Change in Control." The Agreement also required an analysis of whether Plaintiffs suffered a Material Alteration in Compensation. This decision was based on a consideration of whether an employees "earnings opportunity is adversely impacted" by a number of factors, including, but not limited to "a material change from the historical levels of Participant awards considering comparable business value and profit contributions," "a material reduction in the proportion of profit and value sharing allocable to incentive funding," or "a material change in the scope of the Participant's responsibilities which limits the employee's contributions to key measures linked to reward

opportunity in the Annual Incentive Plan." The Agreement was offered to a "select group of employees" and was accepted by the Plaintiffs and one or two other executives. In line with the court's decisions in *Bogue* and *Grimm*, this court finds that the Agreement creates an ongoing administrative scheme which obligates the Company to consider the unique circumstances of each of the covered employees and determine whether they are entitled to severance pay and benefits under the terms of the Agreement.

Plaintiffs argue that because the Agreement does not specifically designate a plan administrator, the Agreement does not qualify as an ERISA plan. The court agrees that an ERISA plan must have a plan administrator and that the Agreement does not have a provision that specifically designates PPM, or anyone else, as the plan administrator. However, the Act provides that, in the absence of a designated plan administrator, the plan sponsor, defined as the "employer in the case of an employee benefit plan established or maintained by a single employer," is the plan administrator. 29 U.S.C. §1002(16) (2006). Therefore, the lack of a designated administrator in the Agreement does not preclude ERISA coverage because the Act expressly contemplates that at least some of the plans it covers will not specify a plan administrator. Additionally, the Agreement does specifically grant the "Company," which is defined as "PPM Energy, Inc., its parent company, successors and assigns," the discretion to determine the amount of the prorated annual incentive award the covered employees are entitled to under the Agreement. (Daul Aff. Ex. 1 at 3.)

Along the same lines, Plaintiffs argue that the absence of a specific grant of discretionary authority to the plan administrator prevents the Agreement from qualifying as an ERISA plan. This argument is not supported by either *Bogue* or *Grimm*. While the courts in these cases did not explicitly hold that a contract may be characterized as an ERISA plan in the absence of discretionary

language, a careful reading of the cases reveals that the court did not require an express grant of discretion to support its finding that the contracts before them fell under the provisions of the Act. In *Bogue*, the Ninth Circuit considered a contract that provided that the employer "would determine whether the benefits were appropriate in each case." *Bogue*, 976 F.2d at 1321. The employer argued that the contract, as a whole, "required the sort of discretionary decision-making by the plan's administrator that is the hallmark of an ERISA plan" and the Ninth Circuit agreed. *Id.* at 1322. The two cases primarily relied upon by the Ninth Circuit in *Bogue* also looked to the four corners of the contracts, not specific language granting discretionary authority to the plan administrator, in determining whether the contracts were ERISA plans. *See, Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989)(The contract "required an administrative scheme" and was an ERISA plan.); *Fontenot v. NL Industries, Inc.*, 953 F.2d 960, 962 (5th Cir. 1992)(The question of whether a contract is an ERISA plan depends on whether the circumstances of each employee's termination must be analyzed in light of certain criteria set forth in the contract.). Finally, Judge Brown classified the contract in *Grimm* as an ERISA plan in the absence of evidence that the contract expressly granted discretionary authority to the plan administrator. This court finds that the absence of a specific grant of discretionary authority to the plan administrator in the Agreement does not prohibit a finding that the Agreement is an employee benefit plan under the Act when the Agreement sets forth an ongoing administrative scheme which obligates the plan administrator (whether that role is performed either by the employer or a third party) to analyze the circumstances of Plaintiffs' resignations in light of certain designated criteria.

Plaintiffs then argue that if the court found that PPM is the administrator of the Agreement, "it would create an untenable conflict of interest for PPM." (Pls.' Memo. Supp. Mot. Remand 6).


Page 15 - FINDINGS AND RECOMMENDATION               {SIB}

The question of whether a plan administrator is given discretionary authority which results in a conflict of interest affects the standard of review applied by the court in reviewing the actions of the plan administrator, not whether the plan is an employee benefit plan under the Act. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2007).

Plaintiffs also contend that because the parties individually negotiated the Agreement and intended it to be a contract, not an employee benefit plan, the Agreement is not covered by the Act. This is not supported by the facts of the case or controlling law. First, the fact that the Agreement was offered to a "select group of employees" and is identical for both Daul and Grube contradicts Plaintiffs' claim that the Agreement was individually negotiated. Second, the Ninth Circuit has recognized that a retirement plan offered to just one employee who exerted influence over the design of his severance agreement was an employee benefit plan covered by the Act even though it was exempt from various obligations under the Act. *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996). Third, the parties intent is not determinative; Ninth Circuit has held that a "benefit plan may be created even without a formal intentional plan adoption if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing and procedures for receiving benefits.'" *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991), *quoting Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)(en banc). *See also Bogue*, 976 F.2d at 1321 ("Whether or not Allied-Signal ever thought it would have to administer an ERISA plan does not matter; there was no way to administer the program without an administrative scheme."). The Agreement itself, and the circumstances surrounding the offering and acceptance of the Agreement, reveal all the factors necessary to create an employee benefit plan for the purposes of the Act.

The court finds that the Agreement implicates an ongoing administrative scheme which requires PPM, as the plan sponsor and, therefore, plan administrator, to make a number of discretionary decisions with regard to who is entitled to receive severance pay and benefits and the amount of such benefits. Accordingly, the Agreement is an employee benefit plan for the purposes of the Act.

2. "Relate To" an Employee Benefit Plan

Plaintiffs allege that PPM has improperly determined that their resignation was not a Qualifying Employee-Initiated Resignation based on a Constructive Dismissal or Material Alteration in Compensation under the terms of the Agreement. They ask the court to enforce the terms of the Agreement, declare that they are entitled to receive severance pay and benefits and determine the amount of benefits they are entitled to under the terms of the Agreement. Plaintiffs claim seeks a remedy for PPM's alleged misconduct growing out of its administration of the Agreement and, therefore, "relates to" the Agreement, which the court has determined is an employee benefit plan under the Act.

3. Within the Scope of the Act's Civil Enforcement Provision

As noted above, Plaintiffs ask the court to enforce the terms of the Agreement and award them severance pay and benefits under the Agreement. Plaintiffs are undeniably seeking to recover

/////

/////

/////

/////

/////

benefits due them under the terms of the Agreement and enforce their rights under the terms of the Agreement. Plaintiffs' claims clearly fall within the Act's civil enforcement provision.

*Conclusion*

Plaintiffs' motion to remand (#9) should be DENIED.

<u>Scheduling Order</u>

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than **August 7, 2008**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 23rd day of July, 2008.

_____
JOHN V. ACOSTA
United States Magistrate Judge