FILED
AUG 1 4 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TY DAUL and RAIMUND GRUBE,                                   CV 08-524-AC

               Plaintiffs,                          OPINION AND
                                                                  ORDER

     v.

PPM ENERGY, INC., now known as
IBERDROLA RENEWABLE, INC., and the
CHANGE IN CONTROL SEVERANCE
ENHANCEMENTS FOR KEY PPM
EMPLOYEES PLAN,

               Defendants.

---

ACOSTA, Magistrate Judge:

*Introduction*

Currently before the court are memoranda regarding the standard of review to be applied in

this case submitted by Plaintiffs Ty Daul and Raimund Grube (collectively "Plaintiffs") and by

Defendants PPM Energy, Inc., now known as Iberdrola Renewable, Inc., ("PPM") and the Change

Page 1 - OPINION AND ORDER                                          {CK}

in Control Severance Enhancements for Key PPM Employees Plan (the "Plan") (collectively "Defendants"). Plaintiffs argue that the court should apply *de novo* review of Defendants' denial of benefits to Plaintiffs because the Plan does not unambiguously grant discretionary authority to a plan fiduciary to make benefits decisions or construe the terms of the Plan. Plaintiffs further argue that Defendants' allegedly wholesale and flagrant violations of Plaintiffs' procedural rights under the federal Employment Retirement Income Security Act (29 U.S.C. §§ 1001 *et seq.* (2006)) ("ERISA") mandate the application of *de novo* review. In contrast, Defendants argue that the applicable standard of review in this case is abuse of discretion because the Plan was, in fact, an amendment to the PPM Energy Severance Plan (the "Existing Plan") which expressly vests the administrator with discretionary authority to make benefit determinations and construe the terms of the Existing Plan. Furthermore, Defendants argue that PPM provided Plaintiffs with a full and fair review process and engaged in an "ongoing, good faith exchange of information" with Plaintiffs and that Plaintiffs failed to come forward with any evidence of a "flagrant" violation that would mandate the application of *de novo* review. For reasons set forth below, this courts finds that *de novo* review applies to the denial of benefits to Plaintiffs under the Plan.

## Background

The background of this litigation recited in the Findings and Recommendation filed on August 7, 2008 (#26) will not be repeated here.[1] Additional background pertinent to the instant motion is set out below.

On November 15, 2007, Plaintiffs informed PPM of their intent to invoke a Qualifying

---

[1] Those Findings and Recommendation were adopted and can be found at 2008 WL 4283262 (D. Or. Sept. 17, 2008). Since then, the parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

Employee-Initiated Resignation under the Plan (Pls.' Mem. Appl. Stnd. Rev. ("Pls.' Mem.") Ex. 5 at 1) and discussed their positions with Martin Mugica, a senior vice president of PPM. (PPM's Mem. Stnd. Rev. ("PPM's Mem.") Ex. 1 at 2.)

On December 5, 2007, Linda Wah, PPM's vice president of human resources, responded to Plaintiffs and indicated that she disagreed with Plaintiffs' assertions that the constructive dismissal or material alterations in compensation had occurred, making Plaintiffs ineligible for severance benefits under the Plan. (Pl.'s Mem. Ex. 7 at 1.) Ms. Wah addressed each of Plaintiffs' claims and explained why she did not agree with them. (*Id.* at 1-3.) In the closing paragraph of her letter, Ms. Wah wrote:

> This company is open to discussing your concerns *as they relate to your continued employment* and would like to schedule a meeting with you in the near future to begin *those* discussions. If there are specific actions you believe the company should take that would *cure* your claim under the Program, please provide us with those in writing by next week.

(*Id.* at 3 (emphasis added).) On December 7, 2007, Ms. Wah sent an email to Plaintiffs proposing a meeting in Pennsylvania with Alvaro Delgado, PPM's human resources director, on December 18, 2007. (PPM's Mem. Ex. 2.) In that email, Ms. Wah indicated that "[she did] not know the process but will keep [Plaintiffs] apprised if there [was] clarity over the next week." (*Id.*) On December 17, 2007, Ms. Wah asked Plaintiffs to come to the following day's meeting prepared to discuss, among other things, what caused Plaintiffs to submit their notice of resignation. (PPM's Mem. Ex. 3.) She also asked for proposals of terms mutually agreeable to both Plaintiffs and PPM. (*Id.*) Ms. Wah indicated that PPM did not feel that Plaintiffs had triggered the severance provisions under the Plan and was not willing to spend any more than what Plaintiffs were already entitled to under their existing compensation package. (*Id.*) Ms. Wah also noted:

Page 3 - OPINION AND ORDER                                                                    {CK}

[PPM has] not heard any compelling reasons why we should negotiate different terms than what you already have. You should spend this meeting getting the company to understand *why* you believe *you need to leave the company or what it would take to motivate you to stay.*

(*Id.* (emphasis added)) On December 20, 2007, Ms. Wah emailed Plaintiffs a summary outlining PPM's proposal in response to Plaintiffs' proposal. (PPM's Mem. Ex. 4 at 1.) The summary included proposed bonuses and other amendments to Plaintiffs' existing compensation packages if they would commit to continuing their employment through December 31, 2008, at a minimum. (PPM's Mem. Ex. 4 at 2.) On December 26, 2007, Plaintiffs emailed to Ms. Wah and Mr. Delgado their counter-proposal for continuing employment with PPM. (PPM's Mem. Ex. 5 at 2-3.) The parties could not resolve their disagreements, and Plaintiffs' employment with PPM ended on January 14, 2008.

## *Legal Standards*

### A. Grant of Discretion to the Plan Administrator

#### 1. The Requisite Language

The default standard for reviewing the denial of benefits under a plan that is subject to ERISA is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan unambiguously provides the administrator authority to determine eligibility for benefits or to construe the terms of the plan, the standard of review is altered from the default *de novo* standard to the more lenient abuse of discretion standard. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). While no "magic" words are required, the Ninth Circuit has held that wording which grants the power to interpret plan terms and to make final benefits determinations confers discretion on the administrator. *Id.* On the other hand, plan terms which merely identify the

administrator's tasks but bestow no power to interpret the plan are insufficient to confer discretionary authority on the administrator. *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1113 (9th Cir. 2001).

    2.  Amendment of a Plan

    The requisite grant of discretion to the administrator may be derived from any number of plan documents. *Klebe v. Mitre Group Health Care Plan*, 894 F. Supp. 898, 902 (D. Md. 1995). "ERISA provides an employer with broad authority to amend a plan and does not suggest that an amendment creating a new benefit structure also creates a second plan." *Hughes Aircraft Co. v. Jacobson*, 522 U.S. 432, 442 (1999). However, while ERISA does not require employers to meet difficult standards in order to amend a welfare benefit plan, it does provide minimal procedures that must be followed. *Coffin v. Bowater, Inc.*, 501 F.3d 80, 90 (1st Cir. 2007). 29 U.S.C. § 1102(b)(3) requires "[e]very employee benefit plan shall . . . provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan . . . ." Among other things, the language of an ERISA plan amendment must clearly alert the parties that the plan is being amended so that disputes between employees and their employers may be resolved by reference to the documents that govern the plan. *Coffin*, 501 F.3d at 90-91.

## B. Flagrant Violations

    If the plan administrator's procedural violations are flagrant, *de novo* review applies. *Abatie*, 458 F.3d at 973. "Procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005). "When an administrator engages in wholesale and flagrant violations

of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purposes

of the plan," *de novo* review of the administrator's decision to deny benefits is appropriate. *Abatie,*

458 F.3d at 971. ERISA is designed to promote a good faith bilateral exchange of information on

the merits of claims between the administrator and the claimant. *Jebian v. Hewlett-Packard Co.*

*Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1107 (9th Cir. 2003). Therefore, in the

context of an ongoing, good faith exchange of information, "*inconsequential* violations of the

deadlines or other procedural irregularities would not entitle the claimant to *de novo* review."

*Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir.2003)(emphasis added).

*Discussion*

A.  Grant of Discretion to the Plan Administrator

       PPM does not dispute the absence of the necessary language conferring the discretionary

authority to the administrator in the Plan itself. Instead, PPM contends that the Plan is an

amendment (PPM's Mem. at 1-2) or "inextricably tied" (PPM's Sur-Reply Stnd. Rev. ("PPM's Sur-

Reply") at 3) to the Existing Plan and that the provisions in the Existing Plan, such as an express

grant of discretionary authority to the administrator, apply to the Plan. (*Id.*) In support of this

proposition, PPM cites to *Conley v. Kemper Ins. Co.*, 2005 WL 2230153 (N.D. Cal. 2005) and

*Whitfield v. Torch Operating Co.*, 935 F. Supp. 822 (E.D. La. 1996). In *Conley*, the district court

found an employer's letter to certain key employees, offering to modify an existing benefit plan to

provide "enhanced severance" benefits, was a part of the underlying plan. *Conley*, 2005 WL

2230153 at *1, *5. The court reasoned that "[t]he letter specifically stated that it was not a new

employment agreement, and importantly, expressly incorporated the underlying plan [by stating] '*the*

*terms of the [underlying plan] shall remain in effect.*'" *Id.* at *5 (emphasis in original). The court

further explained that the letter explicitly contemplated situations where the terms of the underlying

plan were to apply to determine whether an employee was entitled to the enhanced amount.  An

Eighth Circuit opinion cited by *Conley*, *Stearns v. NCR Corp.*, 297 F.3d 706 (8th Cir. 2002), also

made a similar finding.  The Eighth Circuit found that an enhanced benefit program contained in

documents advising beneficiaries to "refer to [an existing plan] booklet . . . for the details of the

[program]" merely amended the existing plan.  *Id.* at 711.  The appellate court also noted that the

document by which the employer adopted the enhanced benefit program confirmed that it was an

amendment to the existing plan.  *Id.*  In addition, the district court in *Whitfield* found that a later

severance package which included language stating that "the employee agrees to release [the

employer] from 'any and all claims to *different or additional* severance benefits . . . ' " was an

amendment of the existing plan.  *Whitfield*, 935 F. Supp. at 830 n.19 (emphasis in original).

   Here, the references to the Existing Plan in the Plan do not have the level of specificity found

in the foregoing cases.  First, unlike the amendments found in *Conley* and *Stearns*, the Plan does not

specifically state that it is not a new agreement or that it is an amendment of the Existing Plan.

Instead, the Plan and the memorandum accompanying the Plan include contradicting phrases to

distinguish the Plan from other plans.  The Plan states "[t]hese severance enhancements are in lieu

of, not in addition to, any severance benefits for which the Participants may otherwise be eligible for

under any other policy, plan, or individual arrangement" (Pls.' Mem. Ex. 1 at 3), whereas the

memorandum provides that "[i]n addition to these enhanced severance benefits and terms, you will

also be eligible to receive other severance benefits which would otherwise be available to you under

the regular severance terms . . . ."  (*Id.* at 1.)  The court need not delve into the significance of the

contradiction which the phrases present because the court finds that neither phrase clearly identifies

{CK}

the Plan as an amendment to the Existing Plan.

Second, the Plan does not expressly incorporate the Existing Plan by making direct reference to the efficacy of the Existing Plan. For instance, the amendment in *Conley* made clear that the terms of the existing plan were to remain in effect. The amendment in *Stearns* directed beneficiaries to refer to the existing plan's booklet for the details of the program. On the other hand, the Plan indicates that the severance pay awarded under the Plan may or may not be based on the calculation using the terms of the Existing Plan. ("Severance pay will be based on the greater of severance pay as calculated under the terms of the [Existing Plan], or the Participant's base pay and target bonus for twelve (12) months." (Pls.' Mem. Ex. 1 at 5.))

Third, unlike the amendment in *Whitfield*, the Plan does not include a release through which an employee affirmatively releases any and all claims under different or additional severance benefits. Again, the references to other severance benefits or plans in the Plan are contradictory and are ambiguous as to whether the Plan entitles Plaintiffs to other severance benefits or not. Also, as Plaintiffs correctly point out, the instant case is distinguishable from *Whitfield*, where the issue was not whether a later severance package was a separate plan, but instead whether the plaintiffs were entitled to benefits under a prior plan that had been expressly superseded. (Pls.' Reply Appl. Stnd. Rev. at 8.)

PPM argues that because the Plan does not include any claims and appeal procedure in its three-page document, it is reasonable to assume that the intent was for the claims procedures and the grant of discretion under the Existing Plan to apply to claims under the Plan. (PPM's Sur-Reply at 3.) But this argument is not supported by the contemporaneous record. Ms. Wah's statement in her email dated December 7, 2007, that she "[does not] know the process but will keep [Plaintiffs]

{CK}

apprised if there is any clarity over the next week" demonstrates that PPM's own vice president of human resources did not know how claims, such as Plaintiffs', were to be processed under the Plan. This level of uncertainty by the PPM employee who, logically, should know with certainty how Plaintiffs' claims should be processed conclusively rebuts PPM's argument that the claims procedure and the grant of discretion under the Existing Plan were intended to apply to claims under the Plan. The Existing Plan's language reinforces this conclusion: the vice president of human resources is identified as the administrator who has the exclusive authority to interpret provisions as well as to make determinations about the facts and other information related to claim and appeals. (Pls.' Mem. Ex. 4 at 16, 17.) Thus, PPM's argument on this point is without merit.

Lastly, PPM focuses on the use of the word "enhancement" in the title of the Plan, and contends that such use confirms that the Plan is an amendment. (PPM's Mem. at 4.) The court dismisses this argument without further analysis for none of the cases cited by PPM indicates the use of word "enhancement" is dispositive in concluding the plan in question to be an amendment of an existing plan. Furthermore, in the context of the other ambiguities already discussed, the term is simply inadequate to link the Plan with the Existing Plan and its procedures.

B. Flagrant Violations

Even if the court were to find that the Plan was an amendment to the Existing Plan and that the express grant of discretion to the fiduciary also applies to the Plan, the court finds that *de novo* review of Defendants' decision to deny benefits to Plaintiffs is nevertheless appropriate. "When a decision by an administrator utterly fails to follow applicable procedures, the administrator is not, in fact, exercising discretionary powers under the plan, and its decision should be subject to *de novo* review." *Abatie,* 458 F.3d at 959. "When an administrator engages in wholesale and flagrant

violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying

purpose of the plan as well, we review *de novo* the administrator's decision to deny benefits." *Id.*

at 971. The court finds that PPM failed to follow the applicable procedures and that such failures

were wholesale and flagrant violations of ERISA, subjecting PPM's decision to *de novo* review.

    1. PPM Failed to Follow Applicable Procedures.

    The Code of Federal Regulations requires the notification of benefit determination set forth,

in a manner calculated to be understood by the claimant, certain information including:

> (iii) A description of any additional material or information necessary for the
> claimant to perfect the claim and an explanation of why such material or information
> is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to
> such procedures, including a statement of the claimant's right to bring a civil action
> under section 502(a) of the Act following an adverse benefit determination on
> review.

29 C.F.R. § 2560.503-1(g)(1). Furthermore, 29 C.F.R. § 2560.503-1(h) sets forth the requirements

for the appeal of adverse benefit determinations and provides, in pertinent part:

> (1) In general. Every employee benefit plan shall establish and maintain a procedure
> by which a claimant shall have a reasonable opportunity to appeal an adverse benefit
> determination . . . .
>
> (2) Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this
> section, the claims procedures of a plan will not be deemed to provide a claimant
> with a reasonable opportunity for a full and fair review of a claim and adverse benefit
> determination unless the claims procedures --
>
> (i) Provide claimants at least 60 days following receipt of a notification of an adverse
> benefit determination within which to appeal the determination[.]

29 C.F.R. § 2560.503-1(h).

    Except for a brief description of the applicable notice period, the Plan is silent on claims and

appeal procedures. On the other hand, the Existing Plan outlines claims and appeal procedures consistent with the applicable code. Even assuming that the Plan was an amendment to the Existing Plan and that the Plan maintained the necessary claims and appeal procedures, the court finds that PPM failed to follow such procedures when denying Plaintiffs' benefits. First, Ms. Wah's December 5, 2007 letter does not include any description of the Plan's review procedures, the time limits applicable to such procedures, or a statement of Plaintiffs' right to bring a civil action under ERISA following an adverse benefit determination on review. Nowhere in the letter does Ms. Wah make reference to a review procedure. Rather, Ms. Wah's remarks limit future discussions to Plaintiffs' continued employment. ("This company is open to discussing your concerns *as they relate to your continued employment* and would like to schedule a meeting with you in the near future to begin *those* discussions." (Pls.' Mem. Ex. 7 at 3 (emphasis added).)) Furthermore, the description of additional material or information requested by Ms. Wah from Plaintiffs is not required to perfect Plaintiffs' claims but, rather, was the information necessary for PPM to cure their claims. ("If there are specific actions you believe the company should take that would *cure* your claim under the Program, please provide us with those in writing by next week." (*Id.* (emphasis added).))

Second, Ms. Wah's December 7, 2007, email proposing a meeting with Mr. Delgado does not mention any references to claims or appeal procedure. Instead, Ms. Wah states in her email that she "[does not] know the process but will keep [Plaintiffs] apprised if there is any clarity over the next week." Not only is this statement inconsistent with the contention that the Plan was an amendment to the Existing Plan, as explained earlier, it also is detrimental to Plaintiffs. The Existing Plan requires an applicant who has received an initial denial of his claim for benefits to request an appeal of his denied claim within 60 days after he receives the written notice of the denial. (Pls.'

Mem. Ex. 4 at 14.)  The applicant may call the plan administrator to resolve the matter without filing

a formal appeal.  (*Id.*)  However, "the deadline for [the applicant] to submit a formal appeal of [his]

claim will not be extended because of these informal discussions."  (*Id.*)  Therefore, the time for

Plaintiffs to appeal the denial of benefits is not tolled while the vice president of human resources

attempts to clarify the claims process afforded under the Plan.

        Third, the only written communication that alludes to any type of review of Plaintiffs' claims

is Ms. Wah's email dated December 17, 2007.  Yet, this email is also deficient in advising Plaintiffs

of the Plan's review procedures, the time limits applicable to such procedures, and Plaintiffs' right

to bring a civil action under ERISA following an adverse benefit determination on review.  While

Ms. Wah points out that "[PPM has] not heard any compelling reasons why [PPM] should negotiate

different terms" and asks Plaintiffs for proposals for reaching mutually agreeable terms, Ms. Wah

does not discuss whether Plaintiffs may formally appeal the denial of their claim, how much time

they have to file such an appeal, or what Plaintiffs could do if the appeal were to be denied.  Instead,

Ms. Wah suggests that Plaintiffs provide different scenarios under which Plaintiffs would be willing

to *continue* their employment with PPM or simply resign.  Furthermore, the email seems to be

focused on exploring possibilities of retaining Plaintiffs' employment, not reviewing Plaintiffs'

claims under the Plan.  For example, in outlining what Plaintiffs should prepare to discuss during

the following day's meeting with Mr. Delgado, Ms. Wah lists, among other things:

> - whether you are committed to/interested in continuing your employment with
> [PPM;]
> - what you would like the company to change in order for you [sic] want to continue
> your employment with [PPM;]
> - what caused you to submit notice of your resignation,

(PPM's Mem. Ex. 3 at 1.)  Finally, Ms. Wah finishes the December 17, 2007, email with "[y]ou

should spend this meeting getting [PPM] to understand why you believe you need to leave the company or what it would take to motivate you to stay." Hence, although she makes some indirect references to discussing denial of Plaintiffs' claims, Ms. Wah fails to set forth in her email descriptions of review procedures as required under ERISA.

PPM may argue Plaintiffs should have requested such information. The Existing Plan states: "[i]f you do not receive this information in the notice of the claims denial, please contact the plan administrator and request this information." Such argument is unavailing because PPM has never asserted that the Plan was an amendment to the Existing Plan until filing its memorandum regarding the standard of review. As mentioned in the earlier section, no documents exist identifying the Plan as an amendment to the Existing Plan or directing beneficiaries to refer to the Existing Plan for claims under the Plan. Further, it strains credulity to expect Plaintiffs to have referred to the appeals procedure section in the Existing Plan when PPM's own vice president of human resources did not know what procedures applied to the claims under the Plan.

2. PPM's Procedural Violations Were Flagrant.

The court finds that PPM's procedural violations were so flagrant as to alter the substantive relationship between Defendants and Plaintiffs, thereby depriving Plaintiffs of the opportunity to exercise their right to an appeal as mandated under ERISA and causing substantive harm. PPM contends that PPM engaged in an "ongoing, good faith exchange of information" with Plaintiffs and that the alleged procedural violations were not "wholesale and flagrant," but mere procedural irregularities. (PPM's Mem. at 7, 11.) "When an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity."

*Abatie*, 458 F.3d at 972. In *Abatie*, the Ninth Circuit found that a plan administrator committed procedural irregularities when tacking on a new reason for denying benefits on review. *Abatie* cites *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984), *abrogation on other grounds recognized by Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n. 4 (9th Cir. 1990), as an example of procedural noncompliance that allows for more stringent judicial review. *Abatie*, 458 F.3d at 971. In *Blau*, the administrator kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information. *Blau* 748 F.2d at 1353.

The court acknowledges that PPM engaged in continuous communication with Plaintiffs. However, the court finds that these communications were not a good faith bilateral exchange of information on the merits of the claim, as ERISA and the case law contemplate should be had. The main, if not sole, purpose of PPM's ongoing communication was to explore possibilities for retaining Plaintiffs' employment. The reoccurring theme of the communications was whether, and under what terms, Plaintiffs were willing to continue their employment with PPM; these communications effectively precluded Plaintiffs from exercising their right to an appeal and eliminated the appeal process for Plaintiffs. This is distinguishable from *Abatie* where the beneficiary was afforded an additional review in light of additional evidence and is similar to *Blau*. Here, PPM kept the details regarding the appeal procedure from Plaintiffs and failed to afford Plaintiffs the requisite appeal procedure or provide them the relevant information in writing.

The court finds that the significant procedural irregularities in the review process altered the substantive relationship between Defendants and Plaintiffs, thereby depriving Plaintiffs the right to appeal and causing substantive harm. Such significant procedural irregularities amount to acts in utter disregard of the underlying purposes of ERISA. Accordingly, the applicable standard of review

in the instant case is *de novo*.

*Conclusion*

For the reasons stated above, the court finds that applicable standard for reviewing PPM's

denial of benefits to Plaintiffs is *de novo*.

DATED this _____ day of August, 2009.

JOHN V. ACOSTA
United States Magistrate Judge